UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA
           vs.                                    3:23-MJ-632 (TWD)
PATRICK DAI,
                     Defendant.
_____

## PRETRIAL DETENTION ORDER

Presently before the Court is the Government's motion for pretrial detention of Defendant Patrick Dai. Defendant has been charged by Complaint with Interstate Threatening Communications, in violation of 18 U.S.C. § 875(c). The filing of an indictment or a valid criminal complaint will suffice to establish probable cause to believe a defendant has committed the charged offense. *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985). I find that the Complaint and supporting affidavit, as supplemented by the factual proffer made by the Government, are sufficient to establish probable cause that Defendant committed the acts alleged in the Complaint for purposes of considering detention.

The Government moved for detention based upon risk of flight and risk of danger as provided in the Bail Reform Act of 1984. 18 U.S.C. § 3141 *et seq*. Here, the detention motion may be made under 18 U.S.C. § 3142(f)(1)(A) because the charged offense, Interstate Threatening Communications in violation of 18 U.S.C. § 875(c), is a crime of violence, as that term is defined in 18 U.S.C. § 3156(a)(4)(A),[1] in that it has, as an element, the threatened use of physical force against the person of another. *See United States v. Capriotti*, No. 21 CR 16, 2021 WL 229660, at *3-4 (N.D. Ill. Jan. 22, 2021) (finding 18 U.S.C. § 875(c) is a crime

---

[1] The term "crime of violence" means — (A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another; (B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense[.] 18 U.S.C. § 3156.

of violence and holding a detention hearing pursuant to 18 U.S.C. § 3142(f)(1)(A)) (collecting cases); *see also United States v. Santoro*, 359 F. Supp. 3d 122, 124-25 (D. Me. 2019) (holding 18 U.S.C. § 875(c) constitutes a crime of violence and that the "10 years or more" limitation found in 18 U.S.C. § 3142(f)(1)(A) for purposes of holding a detention hearing does not apply to a crime of violence); *United States v. Pietila*, No. 1:23-cr-78, 2023 WL 4313162, at *2-3 (W.D. Mich. July 3, 2023) (same).

The Defendant argued that because the maximum penalty he faces is imprisonment for five years, the Government is not entitled to move for detention under 18 U.S.C. § 3142(f)(1)(A). (Dkt. No. 14.) For the reasons explained in *Santoro* and *Pietila*, and the explanation by the Supreme Court in *Lockhart v. United States*, 577 U.S. 347, 350-52 (2016) regarding statutory interpretation, the Court disagrees and finds that the "10 years or more" condition in 18 U.S.C. § 3142(f)(1)(A) does not apply to "a crime of violence" for purposes of determining the basis for the detention hearing, and instead applies only to offenses listed in 18 U.S.C. § 2332b(g)(5)(B), the last antecedent immediately before the phrase "10 years or more." Like the courts in *Santoro* and *Pietila*, this Court recognizes that other courts, including courts in this Circuit, have reached a different conclusion regarding the "10 years of more" clause found in 18 U.S.C. § 3142(f)(1)(A). *See, e.g.*, *United States v. Persico*, No. 10-CR-147(DCI), 2017 WL 3669554, at *3 (E.D.N.Y. Aug. 23, 2017) (crime of conviction under 18 U.S.C. § 892, making extortionate extensions of credit); *United States v. Paulino*, No. 19 Cr. 54(PGG), 2020 WL 1847914, at *3 (S.D.N.Y. Apr. 13, 2020) (crime of conviction under 18 U.S.C. § 1915, Hobbs Act robbery). However, those courts did not provide any reasoning or explanation for their conclusions and the cases did not involve the same crime as charged in the present case. As such, I find them unpersuasive.

Moreover, in the alternative, a detention motion may be made under 18 U.S.C. §

3142(f)(2) in this case because, for reasons explained below, the Court finds "a serious risk" that Defendant will flee.

A detention hearing was conducted on November 9, 2023. The Court considered the Pretrial Services Report of November 8, 2023, and Defendant did not request any edits or corrections to that report. The Court also considered the pending Complaint, letters of support and two piano recital programs from 2017 and 2018 received from Defendant, a letter from the Broome County Sheriff's Office setting forth information about medical and mental health services available at the Broome County Correctional Facility where Defendant was housed as of the date of the hearing submitted by the Government, and the arguments and proffers of counsel for the Government and the Defendant. After hearing the arguments of counsel and considering the parties' proffers, the Court verbally ordered Defendant's detention and indicated this written Order would follow.

To support its motion for detention, the Government bears the burden of proving risk of flight by a preponderance of the evidence, and of proving danger to the community by clear and convincing evidence. *Chimurenga*, 760 F.2d at 405. The factors for this Court to consider include the nature and circumstances of the offense charged; the history and characteristics of the defendant; the weight of the evidence against the defendant; and the nature and seriousness of the risk to the community if the defendant were to be released. 18 U.S.C. § 3142(g).

I conclude that the Government has sustained its burden to prove, by a preponderance of the evidence that Defendant presents a serious risk of flight, and by clear and convincing evidence that Defendant presents an unreasonable risk of danger to others and to the community. I also find that no conditions of release will adequately mitigate those risks. I will consider, in turn, the relevant factors, which support my findings and conclusions:

**1.      The Nature and Circumstances of the Offense Charged**

Defendant has been charged by Complaint with Making a Threat Using Interstate Communications, in violation of 18 U.S.C. § 875(c).  It is alleged that Defendant posted several threatening statements towards Jewish students at Cornell University ("Cornell") in a Cornell online discussion forum about fraternities and sororities on different college campuses.  Some examples of the threats included stabbing and slitting throats of Jewish students, raping Jewish women, beheading Jewish children, and bringing an assault rifle to campus and shooting Jews.  One post referenced "gonna shoot up 104 west" which is a gathering place on campus for Jewish students.  Another post referenced "jewish people need to be killed."  The discussion forum showed that some of the postings were authored by "jew evil," "hamas soldier," "hamas fighter," and "kill jews."  For a more detailed listing of the threats and the listed authors of the threats, reference is made to the Complaint.  *See generally* Complaint.

**2.      The History and Characteristics of the Defendant**

Defendant was a student at Cornell at the time of his arrest.  He maintained an apartment in Ithaca, New York, in the Northern District of New York, while attending Cornell.  He is not employed and has no criminal history.  His parents maintain a household in Pittsford, New York, in the Western District of New York, and he has a younger sibling who resides there as well.  His father is employed as a professor at a University in China, and his mother is self-employed.  His father is currently working in China and spends approximately half of the year there due to his employment.  Defendant is supported financially by his parents.  In addition to his father, Defendant has other family members in China.

Defendant was apparently an excellent student through high school and the current alleged behavior is seemingly out of character for him.  Since high school, however, his

4

medical history is significant for mental health problems and treatment. He has been diagnosed with major depressive disorder and is prescribed medications for it, and he reported talking with therapists during the previous 18 months. He reported suicidal thoughts and recent attempts at suicide on or about some of the same dates as the threatening online posts at issue. His mother picked him up from Cornell and brought him to Pittsford on weekends out of concern for his mental health. She reported that she did not believe he was being helped by the mental health medication he was prescribed. In addition to other ways he contemplated committing suicide, he reported considering suicide by grabbing the steering wheel when his mother was driving him home from Cornell and forcing the car to drive off a cliff with both of them in it. He has taken two leaves of absence from Cornell due to his mental health, one in September of 2022 returning in the Spring of 2023, and the other in February of 2023 returning in May of 2023. He reported negative beliefs and thoughts about himself, low self-esteem, limited self-efficacy, fatigue and trouble falling asleep, and difficulty concentrating to his health providers.

### 3. The Weight of the Evidence Against the Defendant

The Complaint alleges that Defendant made multiple threats as briefly outlined above through internet posts traced to him at both his Ithaca apartment and his family home in Pittsford. He admitted to law enforcement, after receiving *Miranda* warnings, that he was the person who used the internet to post the subject threatening messages and he apparently posted an apology for the threats prior to his arrest. A shotgun and katana-type sword were found at the Pittsford residence. In short, the weight of the evidence is strong and supports detention.

### 4. The Nature and Seriousness of the Risk to the Community

Defendant has been charged with a violent crime which includes the posting of

horrific, violent threats directed toward a specific community of people based upon their religion and heritage. These threats alone represent a distinct harm to the community. Some of the threats encouraged others to commit violent acts against the specific community of people. He has active and ongoing significant mental health problems and symptoms which are not under control even with his current mental health treatment. He has a history of suicidal ideation and attempts. The information proffered at the hearing and what the Court has considered show the Defendant is a very troubled young man who may have been bullied in the past and is currently in a downward spiral suffering from severe depression with suicidal ideation. This Court finds Defendant's ongoing mental health issues, the detailed violent threats directed to a specific community of people, coupled with apparently having access to a firearm and sword present a danger to the community.

### 5. The Serious Risk of Flight

Defendant has significant family ties to a foreign country and his father is essentially residing in China for work at the present time. His parents support him and they have resources with regard to the ability for him to travel to the foreign country. More importantly, his current mental health condition is not under control despite ongoing treatment since approximately the spring semester of 2021 consisting of therapy and medication; and his behavior is unstable and erratic including his suicidal ideation and recent attempts at suicide coinciding with the events charged in the Complaint. Additionally, Defendant's efforts to conceal his identity when posting the subject threats suggest a potential capacity to evade detection if he were to flee. Based upon a preponderance of the evidence, the Court finds Defendant presents a serious risk that he will flee.

### 6. Consideration of Conditions of Release

The Court has considered whether any conditions of release would reduce Defendant's

risk of danger to others to an acceptable level, and the risk of flight, and finds that no combination of conditions would do so.

The Court notes that Defendant would likely benefit from intense mental health treatment and counseling.  Therefore, he should be housed at a facility that offers comprehensive mental health care where he can obtain such services both within the correctional facility and outside the facility with specialized mental health treatment providers where warranted and feasible.  If possible, Defendant should be housed at a facility closer to Pittsford.  Defendant should also be provided with his glasses which were apparently not supplied to him when he was transported to Court for the detention hearing.  Counsel for Defendant also reported to the Court that Defendant's mother was denied visitation with him on two separate dates when she tried to visit him.  Therefore, Defendant should be afforded opportunities for visitation with his mother and family as prescribed by established facility rules which should be promptly provided to his family.

**WHEREFORE**, it is hereby

**ORDERED**, that the Government's motion for detention is **GRANTED**, and it is

**ORDERED**, that Defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.  Defendant shall be afforded a reasonable opportunity for private consultation with defense counsel.  On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

Dated:      November 16, 2023
            Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge